Yes, sir. Good morning, Your Honor. Donald McPherson on behalf of Mr. Henry. I wasn't the one that planned it, or I wasn't the one that pulled the trigger or nothing. I was just there at the wrong place at the wrong time. I didn't know the things that were going to happen, happened. That's from excerpt of Record 54. That's the defendant recanting before the sentencing judge. He also recanted before the probation officer at the PSR page 7, the bottom paragraph 30. He did not know what was going to happen, but knew something bad would happen when Nash asked for the gun. Twice he recanted. In my 35 years of practice, I've never heard of, much less seen, a case in which a defendant entered a plea of guilty, recanted before the probation officer, again recanted before the sentencing judge, and yet the sentencing proceeded. This issue ties in with the diminished capacity issue. We hear from counsel at the time of the entry. So you're suggesting, if I get your argument, and I was interested the way you began, you're suggesting that all things said during the time of getting the plea agreement put together, or during the time that they stood and took the plea, are absolutely of no use. I wouldn't say of no use, Your Honor. I would say that they demonstrate that my client did not knowingly, intentionally … Well, if I may read what counsel stated at the time of the plea, he was asked by the court, by the magistrate, by the court, by the magistrate, by the magistrate, by the magistrate, whether there was any reason for him to believe that he was not competent. And he said? And in ER 9, he said, I would note that one of my concerns when I first met him, I'm sorry, I would note that was one of my concerns when I first met him. It takes a little longer sometimes for me to process things. So what you want to do is you want to read the comment that suggests that it takes a little longer to process, but I don't have any concern. That's in fact what counsel told the court. I read that comment pretty carefully because that was one which I thought was pretty important. But he didn't say, and because of that, I don't think this could ever be a good plea, and because of this, I don't think the defendant can do what he needs to do. It says sometimes he's a little slower than responding to me than he should, but when I go over it twice, he does understand the general nature of the proceedings and what is going on. And I'm letting the court know that so the court can full well know what the situation is. But he did not investigate. My point is that put him on notice that something's not quite right mentally with this defendant, and it put him on notice that he should investigate. And we've cited numerous cases, this circuit and other circuits, in which the court held ineffective assistance of counsel for failure to investigate once counsel has put on sufficient notice of a possible, of a potential diminished capacity defense. And that's the main point here. And I agree with the court. It's not as strong as it might be as far as the notice, but it's sufficient notice. It's inquiry notice. He's on notice to make further inquiry. He did not do that. Now, you couple that, and I say the work, the two work hand in hand. You couple that with what I just quoted from the recanting before the district court, and defendant likewise recanted before the probation officer. And I understand what you're saying, I guess, when I read the cases. I mean, I go to the Fifth Circuit case, and Boochillon is the way I say it. It might be Boochillon. I don't know. I'm just from Idaho. But when I look at that case, I mean, I looked at that case. I look at the Parkes case, which is the Eighth Circuit case, which both are cases you put on my table. That, it seemed, no question the defendant or the counsel was put on notice. I mean, no question in those particular cases. We're not talking about here. We're talking about a totally different case than those two cases. I mean, I appreciate they're near the point or they're where you want to go, but they didn't seem to get to where you wanted to go to me. Well, I agree. Those cases are stronger from the standpoint of how much notice counsel had as to a potential problem. But the key is the terminology inquiry notice. Once you're on inquiry notice, you have to inquire further. Well, it seems to me also that you argue that the mere existence of family, school, or medical records, which might contain information about mental health, would put somebody on notice. Well, the problem, of course, here is that my client is without counsel. And one of the options we've asked for in the alternative is remand, appoint him counsel, and give him an evidentiary hearing on this issue of what do his records demonstrate. What would counsel have found out had he done the research that he was required in my position he was required to look further into the matter to see if there was a real issue there. So we really don't know what the records say, but you say having the records there say enough, even though we don't know what they say. Is that your argument? That's correct. It's back to inquiry notice. And we couple that with this other problem of the language of the plea agreement, where he's pleading to aiding and abetting, supposedly, but then the language of the plea agreement, I'm sorry, well, the plea agreement, the actual factual basis, it says, quote, the defendant, with the knowing and intentional aiding of another, deliberately and intentionally killed Aaron Tierno by shooting Tierno in the back of the head with a firearm, causing his death, end quote. That sounds, my read of that, my grammatical read of that straightaway, is that he's admitted to killing the victim with the aid of somebody else. Not that he is. How do you interpret the interlineation in his initials next to it? The page prior to the page that you were referring to sets out the elements of aiding and abetting correctly. That's correct. And then the factual basis section, which you rely on, was changed by Mr. Henry. How do you interpret that? Well, it was changed. Because he changed aid to aiding. With respect to what I've just read, the word aid was changed to aiding. That doesn't change, I think that changes nothing. The Indian Reservation issue was also changed, but that's not what I'm discussing just now. So my point is, my read of that is he pled to killing this man with the aid of someone else. That's what it reads grammatically. And that's the other inconsistency, as the Court just pointed out. Just prior to that, the Court read the elements, which, by the way, if I may go with that issue a moment, the Court read the element that you are an Indian, defendant is an Indian, meaning presently, meaning as we stand before the Court. That's not the element of the offense. The element of the offense is that he was, on the day of the offense, an Indian. Do you deny that he was? I'm sorry, Your Honor? Do you deny that he was an Indian at the time of the offense? I don't have the evidence sufficient to know whether he was or not, because you've got the Bruce test. So this is a hypothetical. Hypothetically, because a Bruce test requires both objective and subjective tests, that is, two factors, and of the second factor, four, I'm sorry, two prongs, of the second prong, four factors. And those four factors are, at least three of them are subjective. The first is enrollment in a tribe. Well, it appears he admits that he's enrolled in a tribe. We have no evidence that the tribe was recognized by the federal government at that time. But the other three factors under the second prong concern subjective analysis, that is, how much connection he had with the federal government. Did he engage in sweats ceremonies? Did he walk, talk, act like an Indian? Indian blood is not sufficient. It has to be more than that under the Bruce test, which is my whole point in much of my brief, that this is a very important issue. This Court has demonstrated by the Zepeda case where this Court went 180 from its first decision and now has issued another decision reversing, finding the acquittals in both decisions. But in the first decision, this Court held that it was a matter of fact as to whether the tribe was recognized. In the second decision, the Court decides it's a matter of all. The point of that is there's a real conundrum out there concerning this whole Indian issue. My problem with the Indian issue in this case is it's a plain air issue. My client didn't raise it below. I'm appointed on appeal. He doesn't have counsel, so I raise it presently. But I think coming back to the main issue in the case, I think the record demonstrates that he did not knowingly, intelligently, and voluntarily enter the plea. Well, I'm sorry. Go ahead. Well, the district court made that finding, though, made a specific finding that he was competent to make the plea. And you're saying, but the district court didn't have all the information that he should have. Is that what you're saying? Well, in the district court, I think it's ignoring the recanting and ignoring no one pointed out. Well, I'm talking about the plea, not what, you know, occurred after the plea. During sentencing, he recants. No one makes mention of. I'm talking about during the plea. During the plea. What more could the district court have done during that plea? I'm talking not the lawyer now, but the court. Actually, it was the magistrate. The district court, the magistrate, during the plea colloquy, number one, could have had the elements, should have had the elements correctly. That is, you were an Indian on the day of offense. Well, just a minute. Let's go back to your mental capacity problem because, mental impairment problem, because it seems to me that what you're really arguing to us is, I don't know what we got here. I think there's something in these records. I think they'll well document diminished capacity. Don't know. Haven't ever looked at them. Don't know what they say, but I think they will. On the other hand, we've got a case where your client is there. He's giving his testimony. He's talking about his plea. His counsel gets up and says he understands that he's competent, and I got all kinds of case law that says, if that happens, I'm to give deference to that counsel. And he even says, I was initially concerned, but don't be worried about it, judge, because that's okay. He is competent. I guess then the judge listens to the guy, and the guy doesn't seem to have any problem when he's listening to him, when he gives his plea. And I got all kinds of cases, including Mims, that says, contemporaneous on the record statements is pretty straight, and now you want me to throw that over for, I think there might be something if you look at it, judge. No, Your Honor. I want you to throw it over because of a lot which shows on the record that I've just pointed out. That is the factual basis which says he committed the offense with the aid of someone else, which is grossly totally inconsistent. Just a minute. Just a minute. In the plea, there's no question what he said and what he said he did. All you're trying to do is take after use statements, after statements that he might have said, me having been a district judge and seeing what the situation is, I know what I would have done under the situation, but I wasn't there. We had a district judge there, and now I'm trying to decide if that district judge or counsel, given my precedent, ought to have said, oh, well, get rid of this because of incompetency. We're not talking about now he wants to recant. Well, now, just a minute. You know what you got out of this. You know what the government's taking away. You know what kinds they're getting rid of. Maybe you better think about that again. We're not talking about that. We're talking about incompetency, which wasn't raised whatsoever. I'm talking about both. They're related. Diminished capacity is a separate issue related to the issue of whether, aside from that, he knowingly, intentionally, and voluntarily entered his plea. And I submit the record shows a whole lot of confusion on behalf of a whole lot of people, from the probation officer, prosecution, defense counsel, and the district court judge. The district court judge entering a sentence after hearing him recant. Now, that's you. I've heard your argument. I appreciate your argument, counsel. Go ahead. Good morning. My name is Tom Simon, and I was the assistant United States attorney assigned to this case at the district court level. The performance of the attorneys who represented the defendant during the district court proceedings did not fall below a level of objective reasonableness, and nor was there any prejudice to this defendant. At the initial parents' arraignment and detention hearing, the first counselman experienced federal public defender representative of the magistrate court, that the defendant had read and understood the indictment. They waived the reading and entered a not guilty plea. At no time did that experienced assistant federal public defender represent to the magistrate court or later to the district court during the month and a half of his representation that at any time the defendant suffered some sort of mental competency or mental capacity issue. The second attorney was appointed after there was a conflict with regard to the federal public defender's office. During the course of that attorney's representation, we were able to enter into what I would submit a reasonable plea disposition with regard to this defendant. The defendant was charged with seven very serious crimes, two including murder first degree, both felony murder and premeditated murder, as well as firearm associations with each of those crimes. And the defendant was looking at between, well, up to life imprisonment with regard to five of the seven charges for which he was indicted. The plea agreement which we entered into involved a lesser included offense of only one of those charges, murder second degree, with a specific agreement that the defendant would not receive any more than 25 or less than 15 years with regard to the case.  And dismiss all the rest of the counts. We dismissed all the rest of the counts. We had also offered an alternative plea to the defendant, which was the same, murder second degree, but with a set term of 20 years. And the defendant rejected that plea because he wanted to argue for the lesser term, recognizing that he could get the greater term of 25. During the course of the plea colloquy, and the only time, as the court has well noted at this time, the only time that it was mentioned that the defendant had some sort of mental issue was when the district court specifically inquired the defendant's counsel whether it was anything during the course of his representation that he believed might affect this defendant's ability to enter a plea in his competency. And the defendant's counsel said no. He did indicate that there were times where the defendant was somewhat slow and didn't assimilate information as quickly as others. But he also indicated that the defendant had gone through the 11th grade, that he had no indication of special education classes, and when the defense counsel spent time with the defendant that he understood and was competent to enter that plea. There was a bit of confusion in the written record regarding what the government's theory was with regard to Henry, whether he was guilty as an aider-ne-bettor or whether he was actually the shooter. And that, I think, opens up the door for his counsel to then argue that the whole thing was very confusing and he didn't know what he was really pleading guilty to. So what was the government's theory with regard to Mr. Henry? That he aided and abetted co-defendant Nash in the killing of the victim, Aaron Tierno. And so how do you reconcile that aiding and abetting theory with the factual statement in the plea agreement that does seem to suggest that he was actually the shooter? Well, quite frankly, Your Honor, we weren't sure which defendant actually shot the victim at that time. But we were giving the defendant, I suppose, the benefit of the doubt, the facts we could prove beyond a reasonable doubt that he certainly aided and abetted in that crime, whether he was the actual person who pulled the trigger or whether he simply aided and abetted in the commission of that crime. Again, we weren't sure who the person was and still don't know for sure who the person was who actually pulled the trigger. But certainly this defendant, there were sufficient facts to prove beyond a reasonable doubt that this defendant aided and abetted in that commission. And so there may have been that concern with regard to the factual basis, but I think it was clear from the facts and circumstances that we had established that this defendant at least aided and abetted in that commission of that crime. What about the fact that he suggests that he really didn't know the maximum or the minimum penalties? Counsel didn't tell him. Your Honor, I would offer the written plea agreement was rather specific with regard to the range of sentencing between 15 and 25 years. The plea colloquy with the defendant, again, was rather specific by the district court. The district court specifically advised the defendant, asked the defendant, you understand that you could receive 15, but you could receive as much as 25 years. And the defendant acknowledged that that was right. He understood that. And the court, after a rather thorough and complete colloquy, determined there was sufficient factual basis and the defendant understood what was going on and they said the defendant knowingly, intelligently, and voluntarily had entered his plea. The defendant then, during the course of the conversation with the pre-sentence officer, acknowledged his understanding of the facts. The pre-sentence officer had also gone over the plea agreement. The defendant accepted responsibility, received a three-point reduction in his otherwise applicable offense level for that acceptance responsibility. The pre-sentence report also set forth a more detailed involvement of this defendant in the offense conduct section of that report. And the defendant nor did his counsel object to that offense conduct or the fact that the pre-sentence officer recommended, specifically recommended in the justification section of the report, that the defendant would receive up to 25 years. And with regard to the upward departure, the defendant did not object to that either for the serious random nature of the defendant's actions. I would also offer, Your Honor, that after the draft pre-sentence report came out and recommended this upward departure, potential upward departure in the 25 years, and it was at that time that the defendant claimed that his counsel had misrepresented and lied to him and that he moved for a new counsel, the district court inquired of the defendant's counsel, and the defendant's counsel said that he had not lied or intentionally misled the defendant. The court indicated that that experience that it had had with the defendant's counsel would have been contrary to such conduct. It was contrary to the court's conduct or understanding of what the defendant had provided during the plea colloquy. The court nonetheless granted the defendant's request for a new counsel. The new counsel, while the new counsel filed an appropriate sentencing memorandum on behalf of the defendant recommending the mitigating sentence, he called witnesses at the sentencing hearing requesting a mitigated sentence. But at no time did that, again, experienced panel attorney represent the court. The defendant had any mental health issues or competency issues, did not move to withdraw from the plea in that regard. The pre-sentence report, again, which was without objection, reflected that in the defendant's background and history, there was nothing with regard to any mental health history. And again, the district court reviewed with the defense counsel and the defendant. Have you read and reviewed that? They both indicated they had, and there was no objection to that report. Whatever facts the defense seems to think exist out there, we have no idea. We haven't seen it. There was nothing presented during the course of the 2255 matter, which could have been attached to some sort of basis for a finding. The defendant had some sort of records of diminished capacity or competency issue. There was nothing presented, and we still have nothing. So it's just mere speculation at this point in time. Any other questions? Thank you, Counselor. Counselor, I think you've gone over already. We took you over. I have 30 seconds, Your Honor. Thirty seconds. You got it. I just want to point out that the government has not addressed, I think, what's very important in the case, and that is the factual basis does not support the plea. The factual basis reads that defendant murdered the victim with the help of another. The plea is defendant aided another in murdering the victim. That causes the plea. That alone causes the plea to be without knowing, intelligent, and voluntary waivers. Thank you, Counselor. Case 11-17363, Henry v. The United States, is submitted.
judges: Quist, Smith, Nguyen